WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Apex Holdings LLC, | No. CV-24-03035-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| FairBridge Hotels International Incorporated, et al., | |
| Defendants. | |

Plaintiff Apex Holdings LLC brings this breach of contract action against Defendants FairBridge Hotels International Inc., FairBridge Hospitality Systems Inc., Medisavant Inc., Sumeet Kals, Deepinder Singh, and Sumi Kohli (collectively, "Defendants"), who allegedly defaulted on a loan with a principal sum of over one million dollars. (Doc. 1.) Before the Court is Defendants' Motion to Compel Arbitration and Stay Proceedings. (Doc. 18.) The Motion is fully briefed. (Docs. 19, 21.) For the following reasons, the Court will grant the motion.

**I.**

Section 2 of the Federal Arbitration Act ("FAA") states that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has described this provision of the FAA as both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations

omitted).

When assessing a motion to compel arbitration pursuant to the FAA, the Court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (citation omitted).

## II.

Defendants' motion seeks to compel arbitration pursuant to Section 10.1 of the parties' Convertible Note Agreement ("CNA"), which provides:

> This Agreement shall be governed by and construed in accordance with laws of the State of Arizona and all the Parties hereto irrevocably submit to the arbitration board of the State of Arizona as regards any claim, dispute or matter arising out of or relating to this Agreement or any of the documents to be executed pursuant to it.

(Doc. 20-4 at 7.)

Plaintiff does not dispute the validity of the arbitration clause, but rather argues the provision does not encompass the dispute at issue. (Doc. 19.) Plaintiff's opposition is, in essence, twofold. First, Plaintiff argues that Defendants' motion should be denied because it erroneously relies on an outdated draft of the contract and not the final executed agreement. (Doc. 19 at 1-3.) Defendants acknowledge the parties cite to different versions of the contract documents but consent to the Court assessing the May 8, 2022 version proposed as the final contract by Plaintiff. (Doc. 21 at 1.) Therefore, Plaintiff's first basis for denial is moot.

Second, Plaintiff argues the contracts at issue in this action—the Promissory Note and Guaranty—do not contain an arbitration clause, and the arbitration clause in the CNA is not otherwise incorporated into the Note and Guaranty agreements. (Doc. 19 at 4-6.) Defendants contend the Note and Guaranty were executed pursuant to and as portions of

the overarching CNA, and therefore, the arbitration agreement covers any dispute arising out of or relating to all contracts. (Doc. 21 at 2-3.)

The Court has reviewed the Note, Guaranty, and CNA, and agrees with Defendants. The express terms of the arbitration clause mandate arbitration for "any claim, dispute or matter arising out of or relating to" the CNA "or *any* of the documents to be executed *pursuant to it*." (Doc. 20-4 at 7 (emphasis added).) By their own terms, the Note and Guaranty agreements were executed pursuant to the CNA. For example, the Note plainly states, "This Note is executed and delivered *pursuant to the terms of that certain Convertible Note Agreement* . . . ." (Doc. 20-1 at 2 (emphasis added).) And the Guaranty provides in its recitals, "the Lender has agreed to make a loan to the Borrower Entities . . . *pursuant to that certain Convertible Note Agreement* . . . ." (Doc. 20-2 at 2 (emphasis added).) Moreover, the Note and Guaranty are attached as Exhibits A and B to the CNA. (*See* Doc. 20-4 at 2-3.)

Plaintiff relies on a memorandum decision from the Arizona Court of Appeals to argue that merely referencing the CNA in the recitals of the Note or Guaranty does not, by itself, extend all terms of the CNA to the other agreements. (Doc. 19 at 6 (referencing *Siegel v. Simons*, No 1 CA-CV 22-0170, 2022 WL 17685015 (App. Ariz. Dec. 15, 2022).) In *Siegel*, the parties disputed whether the arbitration clause in a 2017 operation agreement was rendered inoperative by a termination agreement executed nearly three years later. 2022 WL 17685015, at *1-2. Ruling in the affirmative, the court determined the plaintiff was under no obligation to arbitrate because the 2020 termination agreement superseded the terms of the 2017 operation agreement—including the arbitration provision. *Id.* at *2. The defendant seeking to compel arbitration also argued the documents were sufficiently related because the 2020 agreement referenced the 2017 agreement in its recitals, thereby extending the obligation to arbitrate to the later agreement. *Id.* at *3. The court rejected this argument, stating "When the recitals are broader than a contract's operative clauses, the recitals cannot be used to extend or broaden the restrictions contained in the body of the agreement." *Id.* (quoting *Fugate v. Town of Payson*, 164 Ariz. 209, 211 (1990)).

Unlike *Siegel*, the contracts at issue here are not mere ships passing in the night. First, the CNA, Note, and Guaranty were executed contemporaneously—not three years apart as was the case in *Siegel*. Therefore, the terms of the Note and Guaranty cannot be said to have superseded the terms of the CNA. Second, the CNA, Note and Guaranty do not fleetingly reference each other in the recitals, but rather repeatedly cite to, cross-reference, and reaffirm the terms of the other agreements. For example, the Note explains that a failure to comply with any term "contained in the [Convertible Note] Agreement" constitutes a default. (Doc. 20-1 at 3.) And the Guaranty provides that "Each Guarantor irrevocably and unconditionally fully guarantees . . . the payment and performance . . . of all amounts due and owing under the *Note and the Agreement*." (Doc. 20-2 at 2 (emphasis added).) As another illustration, the CNA states, "Lender has agreed to make a loan to the Borrowers on the terms and conditions set forth herein *and* in the Convertible Note executed concurrently herewith." (Doc. 20-4 at 2 (emphasis added).)

In a multi-contract situation such as the one presented here, Arizona courts apply a four-factor test to assess whether the agreements are "sufficiently related to justify compelling arbitration of all claims arising under the agreements." *Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*, 231 Ariz. 287, 292 (App. 2012) (citation omitted). These factors evaluate: "(1) whether the agreements incorporate or reference each other; (2) whether the agreements are dependent on each other or relate to the same subject matter; (3) whether the arbitration clause specifically excludes certain claims; (4) whether the agreements are executed closely in time and by the same parties." *Id.* (citation omitted).

The CNA, Note, and Guaranty are replete with internal cross-references, exhibiting the parties' intent to incorporate the other agreements in full. Further, the contracts are dependent on each other and relate to the same subject matter—*e.g.*, the over one-million-dollar loan from Plaintiff to Defendants. The third factor also weighs in favor of arbitration because the arbitration provision in the CNA does not exclude any claims from its reach. Indeed, it is drafted broadly to encompass "any claim, dispute or matter arising out of or

relating to" the CNA "or any of the documents to be executed pursuant to it." (Doc. 20-4 at 7.) And lastly, the agreements were executed contemporaneously, which also supports a finding that any dispute relating to the Note and Guaranty falls under the arbitration provision in the CNA.

Plaintiff argues that conflicting provisions between the Note, Guaranty, and CNA precludes this Court from finding that the CNA's terms govern disputes arising out of the Note and Guaranty. (Doc. 19 at 6-8.) To the extent there is any inconsistency between the agreements to cause doubt as to whether the three documents are part of one integrated contract, the Court resolves such doubt in favor of arbitration. *Sun Valley*, 231 Ariz. at 292 ("[D]oubts about the arbitrability of disputes should be resolved in favor of arbitration.").

Because the agreement is valid and encompasses the dispute at issue, the Court will grant Defendants' motion and stay this action pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 473-74 (2024) ("Section 3 of the FAA specifies that, when a dispute is subject to arbitration, the court 'shall on application of one of the parties stay the trial of the action until [the] arbitration' has concluded.") (quoting 9 U.S.C. § 3).

### III.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. 18) is **GRANTED**, and the parties shall engage in private arbitration as contemplated by the arbitration agreement.

**IT IS FURTHER ORDERED** that this matter is **STAYED** pending arbitration.

**IT IS FINALLY ORDERED** that the parties must file a joint status report on the last business day of each month concerning the status of arbitration. The parties must also file a joint report within seven (7) calendar days of the conclusion of arbitration. The joint report must advise the Court whether (a) the stay can be lifted and (b) this case can be dismissed.

Dated this 14th day of April, 2025.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge