**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Apex Holdings LLC, | No. CV-24-03035-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| FairBridge Hotels International Incorporated, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Compel Arbitration of Counterdefendants Alex Xu and Greentree Hospitality Group (Doc. 27). The question presented is whether Defendants can compel nonsignatories who are not parties to the loan documents containing the arbitration clause to arbitrate related claims. The Court has considered the briefs (Docs. 27, 30, 34) and will deny the Motion.

## I.    BACKGROUND

Alex Xu is the Chairman and CEO of GreenTree Hospitality Group. His daughter, Ashley Xu, is GreenTree's Managing Director of U.S. operations. Plaintiff Apex Holdings, LLC is a "family holding company owned and managed by Alex Xu and his wife." (Doc. 30 at 3.) Apex claims that "[t]he Xu Family makes private investments and loans through Apex, separate and apart from work Mr. Xu does in his capacity as Chairman and CEO of GreenTree." (*Id.* at 2.)

Defendants—FairBridge Hotels International Inc., FairBridge Hospitality Systems Inc., MediSavant Inc., Sumeet Kals, Deepinder Singh, and Sumi Kohli—provide software

and website services to hotels. (Docs. 1 at 1; 27 at 4.) In 2019, Defendants connected with Mr. Xu through GreenTree because both were involved in the hospitality industry. (Doc. 27 at 4.) On May 8, 2020, Apex and Defendants executed a Convertible Promissory Note (the "Note") and Convertible Note Agreement (the "CNA"), under which Apex agreed to loan Defendants up to $1,500,000 in $80,000 monthly installments (the "Loan"). (Docs. 27-10 at 20-27; 27-19.) Mr. Xu signed the Note and CNA in his capacity as a Member of Apex. (Doc. 27-19 at 74.) The CNA contains an arbitration clause providing that "all the Parties hereto irrevocably submit to the arbitration board of the State of Arizona as regards any claim, dispute or matter arising out of or relating to this Agreement." (*Id.* at 73.) Between May 2020 and May 2021, Apex disbursed $1,010,000 to Defendants. (Doc. 1 ¶ 14.)

Separately, between May and November 2020, Defendant MediSavant and GreenTree executed four contracts (the "GreenTree Contracts") for software licensing and website development services. (Docs. 27-25 through 27-28.) Two of the GreenTree Contracts designate Alameda County, California state court as the exclusive venue for disputes. (Doc. 30 at 4.) The GreenTree Contracts do not reference the Note or CNA, and Apex is not a party to them. (*See* Docs. 27-25 through 27-28.)

Apex sued Defendants in this Court in November 2024 for breach of the Note. (Doc. 1.) In April 2025, the Court granted Defendants' motion to compel arbitration. (Doc. 22.) On July 18, 2025, Defendants filed their Answer and Counterclaims in arbitration. (Doc. 27-4.) Counterclaim 1 alleges breach of the Note and is asserted against Apex and Mr. Xu. (Doc. 27-4 ¶¶ 39-43.) Counterclaim 2 alleges breach of the implied covenant of good faith and fair dealing under the Note and is asserted against Apex only. (*Id.* ¶¶ 44-48.) Counterclaims 3 through 14 arise from the four GreenTree Contracts. Counterclaims 3 through 11, which arise from the May 20, 2020, May 29, 2020, and September 3, 2020 contracts, are asserted against both Mr. Xu and GreenTree. (*Id.* ¶¶ 49-99.) Counterclaims 12 through 14, which arise from the November 9, 2020 contract, are asserted against GreenTree (with Ashley Xu identified in the pleadings as an agent of Mr. Xu and Apex). (*Id.* ¶¶ 100-116.)

In October 2025, Apex moved before the arbitrator to dismiss the counterclaims against Mr. Xu and GreenTree as nonsignatories. (Doc. 27-12 at 2-12.) On November 2, 2025, the arbitrator denied the motion, holding that the arbitrability of nonsignatory claims must be resolved by this Court. (Doc. 27-14.) On November 5, 2025, the arbitrator granted summary judgment in favor of Apex on its breach-of-contract claim against Defendants. (Doc. 30-9.) Defendants then filed the present Motion. (Doc. 27.)

## II.     LEGAL STANDARD

The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A federal court sitting in diversity applies state substantive law, *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1995), and Arizona law governs whether nonsignatories may be bound to the arbitration agreement here. *See Olson v. FCA US, LLC*, No. 24-6527, 2026 WL 934267, at *5 (9th Cir. Apr. 7, 2026) (applying California law to determine whether a common law exception applied to compel a party to arbitrate).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he ha[s] not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Arizona recognizes six exceptions under which a nonsignatory may nonetheless be bound: "incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable estoppel, and third-party beneficiary." *Duenas v. Life Care Ctrs. of Am., Inc.*, 236 Ariz. 130, 139 (App. 2014). The general presumption favoring arbitration does not apply when a signatory seeks to bind a nonsignatory; courts instead apply heightened scrutiny. *See Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Props., Inc. v. Robson*, 231 Ariz. 287, 296 (App. 2012).

## III.     DISCUSSION

Defendants seek to compel two nonsignatories to arbitration: Mr. Xu, under either an alter ego or equitable estoppel theory; and GreenTree, under either an equitable estoppel

- 3 -

theory or the related-contracts doctrine. (Docs. 27 at 10; 34 at 9-11.) Because Defendants are signatories seeking to bind nonsignatories, they bear the burden of establishing that an exception to the general rule applies. *See Sun Valley Ranch*, 231 Ariz. at 296. For the reasons that follow, the Court finds that Defendants have not carried that burden as to either Mr. Xu or GreenTree.

### A.    Alex Xu

Defendants seek to compel Mr. Xu to arbitrate the counterclaims asserted against him under either an alter ego or estoppel theory. (Doc. 27 at 10.) It is undisputed that Mr. Xu signed the Note and CNA solely in his capacity as a Member of Apex, and that he is not personally a party to either agreement. (*Id.* at 2.) He is therefore not bound by the arbitration provision in the CNA unless one of the recognized exceptions applies. *See Duenas*, 236 Ariz. at 139 ("Theories for binding a non-signatory to an arbitration agreement include incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable estoppel, and third-party beneficiary."). Defendants invoke two exceptions: alter ego and equitable estoppel.

### 1.    Alter Ego

"Arizona law is clear that the 'corporate status will not be lightly disregarded.'" *JTF Aviation Holdings Inc. v. CliftonLarsonAllen LLP*, 249 Ariz. 510, 514 (2020) (quoting *Chapman v. Field*, 124 Ariz. 100, 102 (1979)); *see also Henderson v. Moskowitz*, 579 P.3d 869, 872 (Ariz. 2025) (reaffirming the principle). To pierce the corporate veil, a plaintiff must establish two elements: "(1) the corporation is the alter ego or business conduit of a person, and (2) disregarding the corporation's separate legal status is necessary to prevent injustice or fraud." *JTF Aviation*, 249 Ariz. at 514 (citation modified). Both elements are required. *See Specialty Cos. Group, LLC v. Meritage Homes of Ariz., Inc.*, 251 Ariz. 365, 367 (2021).

The Court need not decide whether Apex is the alter ego of Mr. Xu because Defendants cannot satisfy the second element. The "injustice or fraud" prong typically requires evidence that the corporation was formed to perpetrate fraud, *Butler v. Am. Asphalt*

- 4 -

& *Contracting Co.*, 25 Ariz. App. 26, 30 (1975); that the corporation was undercapitalized, *Norris Chem. Co. v. Ingram*, 139 Ariz. 544, 547 (App. 1984); or that "observance of the corporate form would confuse the opposing parties and frustrate their efforts to protect their rights," *Keg Restaurants Ariz., Inc. v. Jones*, 240 Ariz. 64, 75 (App. 2016). Defendants offer no evidence of any of these.

Instead, Defendants argue that observing Apex's corporate form would work an injustice because Apex has obtained a $1,010,000 summary judgment against them in arbitration, and unless Mr. Xu is compelled to arbitrate, Defendants will be unable to litigate their counterclaims against him in the same proceeding. (Doc. 34 at 4-6.) Defendants rely on *Gatecliff v. Great Republic Life Insurance Co.*, where the Arizona Supreme Court held that observance of the corporate form could promote injustice because it "could deny plaintiffs recovery from the party responsible for cancelling their insurance policy" and "could permit the two corporations to confuse plaintiffs and frustrate their efforts to protect their rights before suit, while allowing the party responsible for the cancellation to evade liability after suit." 170 Ariz. 34, 38 (1991). According to Defendants, observance of Apex's corporate form will allow Mr. Xu, the party allegedly responsible for interfering with their ability to repay the Loan, to "evade liability." (Doc. 34 at 6.)

But *Gatecliff* concerned whether a parent corporation could be held substantively liable on the merits for the conduct of its subsidiary, where the parent argued it could not be held liable because it was not a party to the contract. *See* 170 Ariz. at 36, 38. The question presented here is different. Denying this Motion does not determine whether Mr. Xu can be held liable for the conduct Defendants allege. It determines only the forum in which that question may be litigated. Defendants remain free to pursue their claims against Mr. Xu in court. *See Henderson*, 579 P.3d at 873 (rejecting equitable arguments based on the inefficiency of litigating "the same matter in multiple courts at the same time"). The injustice contemplated by Arizona law is the denial of a remedy against the responsible party, not the denial of a preferred forum in which to seek that remedy.

Nor does the existence of the arbitration award itself constitute injustice. Defendants

signed the Note and CNA, agreed to arbitration, and lost on summary judgment. (Doc. 30 at 6.) That outcome is the ordinary consequence of contract enforcement, not a basis for disregarding Apex's corporate form to bind a nonsignatory who happens to be Apex's owner.

### 2.    Estoppel

Under Arizona law, a nonsignatory may be compelled to arbitrate under the direct benefits estoppel theory "only when the nonsignatory (1) knowingly exploits the benefits of an agreement containing an arbitration clause, or (2) seeks to enforce terms of that agreement or asserts claims that must be determined by reference to the agreement." *Austin v. Austin*, 237 Ariz. 201, 210 (App. 2015); *see also Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).

Mr. Xu has not sought to enforce the Note or CNA or asserted any claims that must be determined by reference to either. Apex, the signatory, asserted the breach-of-contract claim. (Doc. 1.) The question, then, is whether Mr. Xu has knowingly exploited the benefits of the Note and CNA. Defendants offer two theories here.

### a.    Distributions from Apex

Defendants first argue that Mr. Xu, as a Member of Apex, is entitled to receive distributions from interest payments owed under the Note and CNA and that this expected stream of distributions constitutes a direct benefit. (Doc. 34 at 7.) The Court disagrees. Receiving distributions in the ordinary course of corporate operations is an incident of membership in a limited liability company, not exploitation of any particular contract the company has entered into. To accept Defendants' argument would mean that any individual entitled to receive distributions from a corporate entity could be bound to every arbitration provision in every contract the entity executes. *See Goergen v. Black Rock Coffee Bar, LLC*, No. 3:22-CV-1258-SI, 2023 WL 1777980, at *12 (D. Or. Feb. 6, 2023) (rejecting equitable estoppel argument that nonsignatory owner of a corporate franchisee was bound to franchise agreement's arbitration clause, reasoning that "[t]o hold otherwise would mean that every owner of a corporate entity could be bound under equitable estoppel to the

contracts of the corporate entity, which defeats the corporate structure"). Arizona law does not support such a result. *See Henderson*, 579 P.3d at 872 ("Arizona has not previously adopted the closely related party doctrine, and indeed this Court has admonished that the corporate status will not be lightly disregarded.") (citation modified). Defendants identify no authority holding that a member's right to corporate distributions, standing alone, constitutes knowing exploitation of a contract under *Austin*.

### b.    Services Performed for GreenTree

Defendants next argue that Mr. Xu received direct benefits because Defendants performed substantial uncompensated services for GreenTree at his request during the Loan term, and that they did so to maintain a positive relationship with their investor. (Docs. 27 at 13-15; 34 at 6-7.) This argument fails for two independent reasons.

First, the alleged benefits did not flow from the Note or CNA. The Note and CNA required Apex to disburse loan proceeds and Defendants to repay the Loan with interest. (Docs. 27-10 at 1-27; 27-19.) Nothing in the Note or CNA required Defendants to perform services for Mr. Xu, GreenTree, or anyone else. The services Defendants performed flowed from a separate course of dealing between Defendants and Mr. Xu, not from any term of the Note or CNA. And the benefits supporting estoppel must flow "directly from the agreement" containing the arbitration clause. *See Legacy Wireless Servs., Inc. v. Hum. Cap., L.L.C.*, 314 F. Supp. 2d 1045, 1056 (D. Or. 2004) (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001)); *Austin*, 237 Ariz. at 210. They do not here.

Defendants' subjective belief that they had to perform services to keep their loan draws coming does not change this analysis. Apex had no contractual right to withhold draws based on Defendants' refusal to perform unrelated work. (*See* Doc. 30 at 17-18.) If Apex had improperly withheld a disbursement, the remedy would have been a breach claim against Apex, not the performance of unrequested services for the benefit of a separate corporation.

. . . .

- 7 -

Second, by Defendants' own framing, the services they performed benefited GreenTree, not Mr. Xu personally. (Doc. 34 at 6 (arguing Mr. Xu received benefits "for his entity, GreenTree").) The Motion catalogs services such as developing GreenTree's website, preparing GreenTree's press releases, recruiting GreenTree's staff, and maintaining GreenTree's online operations. (Doc. 27 at 8-9.) Each of these services benefited GreenTree as an entity, not Mr. Xu in his personal capacity. A benefit conferred on a corporation in which Mr. Xu holds an executive position is not, without more, a personal benefit to Mr. Xu sufficient to estop him from contesting the application of an arbitration provision he never signed. *See Goergen*, 2023 WL 1777980, at \*12. To hold otherwise would again require disregarding the corporate form. *See JTF Aviation*, 249 Ariz. at 514; *Henderson*, 579 P.3d at 872.

Because Defendants have not shown that Mr. Xu knowingly exploited the benefits of the Note and CNA, the equitable estoppel doctrine does not provide a basis to compel him to arbitrate.

### B.    GreenTree

Defendants seek to compel GreenTree to arbitrate the counterclaims asserted against it even though GreenTree did not sign the Note or the CNA.[*] (*See* Doc. 34 at 9.) Defendants therefore advance two theories for binding GreenTree to the arbitration clause: equitable estoppel and the related-contracts doctrine articulated in *Sun Valley Ranch*, 231 Ariz. at 292-93.

### 1.    Estoppel

For the same reasons explained above, GreenTree did not knowingly exploit the benefits of the Note or CNA under *Austin*. GreenTree is not a party to the Note or CNA. It received no loan proceeds and owed no repayment obligation. (*See* Docs. 27-10 at 1-27;

---

[*] The Court further notes that two of the GreenTree Contracts, the May 20, 2020 Software End User License Agreement and the May 29, 2020 Software End User License Agreement, contain forum selection clauses designating Alameda County, California state court as the exclusive venue for disputes arising under those contracts. (Docs. 27-25 at 5; 27-26 at 4.) Although neither party developed an argument based on these clauses, their existence further underscores that the parties to those contracts did not contemplate arbitration as the forum for resolving disputes arising under them.

27-19.) Defendants' argument that GreenTree directly benefited from the Note or CNA because Defendants performed uncompensated services for GreenTree during the Loan term (Docs. 27 at 15-16; 34 at 7-8) fails for the same reason that argument failed as to Mr. Xu: the alleged benefits did not flow from the agreement containing the arbitration clause. *See Legacy Wireless*, 314 F. Supp. 2d at 1056. To the extent GreenTree received uncompensated services that should have been compensated, the proper remedy lies under the GreenTree Contracts themselves, not by extending the arbitration clause to a stranger to that agreement.

### 2. Related-Contracts Doctrine

Defendants alternatively argue that the Note and CNA are sufficiently related to the GreenTree Contracts such that the arbitration clause encompasses disputes arising under the GreenTree Contracts. (Doc. 34 at 9-11.) They invoke the framework articulated in *Sun Valley Ranch*, which addresses whether claims arising under one agreement can be compelled to arbitration based on an arbitration clause in a separate, related agreement. 231 Ariz. at 292. After determining that the arbitration clause is broadly worded, a court considers four factors: "(1) whether the agreements incorporate or reference each other; (2) whether the agreements are dependent on each other or relate to the same subject matter; (3) whether the arbitration clause specifically excludes certain claims; [and] (4) whether the agreements are executed closely in time and by the same parties." *Id.* at 292 (quoting *Consol. Brokers Ins. Servs., Inc. v. Pan-Am. Assurance Co.*, Inc., 427 F.Supp.2d 1074, 1082 (D. Kan. 2006)).

The factors do not support extending the arbitration clause to the GreenTree Contracts. Defendants concede that the agreements neither incorporate nor reference each other. (Doc. 34 at 9.) The agreements do not concern the same subject matter. The Note and CNA are loan agreements requiring disbursement and repayment with interest, while the GreenTree Contracts are services agreements requiring software licensing and website development in exchange for payment. (*Compare* Docs. 27-10 at 1-27 and 27-19 *with* Docs. 27-25 through 27-28.) Defendants' framing of the subject matter as "software and

website services for hotels" (Doc. 34 at 10) is too broad; the Note and CNA have nothing to do with services. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009) (holding that contracts were not intertwined where resolution of claims under one did not require examination of provisions of the other). Further, the agreements here are between different parties as Apex and Defendants signed the Note and CNA, while GreenTree and MediSavant signed the GreenTree Contracts. The only factor that arguably weighs in Defendants' favor is the absence of specific exclusions in the arbitration clause, but that consideration is outweighed by the others. (*See* Doc. 34 at 10.) The *Sun Valley Ranch* framework does not bind GreenTree to the arbitration clause.

For the foregoing reasons, neither alter ego, equitable estoppel, nor the related-contracts doctrine provides a basis to compel Mr. Xu or GreenTree to arbitrate as nonsignatories to the Note and CNA.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Arbitration as to Counterdefendants Alex Xu and GreenTree Hospitality Group (Doc. 27) is **DENIED**.

**IT IS FURTHER ORDERED** that the oral argument on Defendants' Motion to Compel Arbitration is **VACATED**, but the status conference set for **May 5, 2026, at 8:30 AM** (Doc. 37) remains **AFFIRMED**.

Dated this 1st day of May, 2026.

Michael T. Liburdi
United States District Judge

- 10 -